## Mulder v. Rauch

*John A. Halstead,* for plaintiff.
*W. Richard Gentry,* for defendant.

KENT, *J.,* January 7, 1974—This matter comes before the court on plaintiff's action in equity in which he seeks to compel from defendant an accounting and other equitable relief. After hearing, we make the following:

### I.  FINDINGS OF FACT

1.  Plaintiff is Peter Lee Mulder, an adult individual residing at 4806 Bryan Road, Mechanicsburg, Pa.

2.  Defendant is Julius B. Rauch, III, an adult individual residing at 44 North Woodmont Drive, Downingtown, Pa.

3.  In 1970, plaintiff was employed by the Commonwealth Land Title Company, a title insurance company, and was a part-time salesman for Hayes-Thorndale Real Estate office.

4. At such time, defendant was the manager of Hayes-Thorndale Real Estate office.

5. In the early summer of 1970, defendant became aware of the availability of a parcel of ground known as the Beale tract, situated in Caln Township of this county. The parties discussed the opportunity presented by the possibility of developing the Beale tract. Plaintiff's father was an officer in a mortgage company and plaintiff was to explore the possibility of mortgage money and a buyer. Defendant was familiar with the zoning matters and was to attempt to have the zoning for the premises changed so as to permit planned residential development of the Beale tract.

6. In the summer of 1970, the parties met with plaintiff's father who suggested that they contact a number of people, one of whom, Samuel Seleznov, was the final purchaser and developer of the Beale tract.

7. In July 1970, defendant entered into a contract of sale for the purchase of the Beale tract with the executor of the Beale estate at a purchase price of $64,000. Defendant delivered to the executor of the Beale estate, in lieu of earnest money, a judgment note which defendant executed for the amount of $5,000.

8. In the fall and early winter of 1970, defendant attended a number of meetings before the Board of Supervisors of Caln Township for the purpose of changing the zoning in force in the district in which the Beale tract was located. Thereafter, the zoning was changed to R-3 to permit planned residential development.

9. On or about March 24, 1971, plaintiff and defendant entered into a written agreement, which set forth as follows:

.

"THIS AGREEMENT WITNESSED this 24th day of March, 1971 Between Julius B. Rauch, III, of Strasburg Road, West Chester, and Peter Lee Mulder, of Racquet Club Apartment, Apt. A-5, 1308 West Chester Pike, West Chester;

"WHEREAS, the said Julius B. Rauch, III and Peter Lee Mulder do agree that all expenses, obligations, indebtedness, income, profit or benefit received in any way for the purchase and/or sale of the 32.2 acre Beale tract, Caln Township, Chester County, Pennsylvania, will and shall be shared equally between the two parties herein.

"IT IS FURTHER AGREED that if the said tract is purchased and developed by Samuel Sekeznov, or his Nominee, that Peter Lee Mulder shall be consisted Listing Agent on the sale of the homes and responsible for the sales promotion of the project.

/s/ Peter Lee Mulder          (seal)
Peter Lee Mulder

/s/ Julius B. Rauch          (seal)
Julius B. Rauch, III"

10. On March 26, 1971, defendant entered into an agreement of sale with Samuel Seleznov whereby defendant agreed to sell his interest in the Beale property to Seleznov in accordance with the terms of said agreement. The agreement, Exhibit B of the complaint, is incorporated herein.

11. On March 30, 1971, a new and substituted agreement of sale was entered into between the Beale estate and defendant, which agreement required the payment of $5,000 in cash as a down payment. At such time, defendant paid the $5,000 down payment to the Beale estate, and shortly

thereafter he requested plaintiff to forward to him $2,500 in cash, in compliance with the agreement entered into between the parties on March 24, 1971. This money was thereafter paid to defendant by plaintiff on April 20, 1971.

12. On June 11, 1971, an extension agreement was entered into between defendant and Samuel Seleznov.

13. On July 7, 1971, defendant, the attorney for the Beale estate, Samuel Seleznov and various other parties met and settlement was held as scheduled. The purchase price for the Beale tract was $165,000 of which $64,000 went to the Beale estate, and $101,000 was to come to defendant. On the same date, defendant received the sum of $16,000 in cash and a commitment from Seleznov that on or before January 31, 1972, Seleznov would pay to defendant the sum of $20,000 in cash and give to defendant a mortgage in the amount of $70,000. The $16,000 in cash received by defendant at the settlement on July 7, 1971, consisted of the return of the $5,000 down payment which had been posted by defendant and plaintiff and $11,000 toward the purchase price of the said property.

14. On July 9, 1971, plaintiff and defendant met and distributed the moneys received by defendant at settlement. Plaintiff received and accepted $2,500 representing his portion of the returned down payment, and $1,792 representing his one-half share of the net profits from the $11,000 paid on account of the purchase price of said property after the deduction of costs and expenses in the amount of $7,416. Five thousand dollars, which was included in the "expenses," represented what defendant characterized as a management commission for his services rendered in pursuance of

this matter. In addition, plaintiff received the sum of $912, representing his share of the sales commission on the property which was to be one-half defendant's share of the total commission.

15. Between July 7, 1971, and the latter part of May of 1972, extensive negotiations ensued between Seleznov and defendant with regard to the consummation of Seleznov's agreement to pay defendant the sum of $20,000 and give him a mortgage in the amount of $70,000 on or before January 31, 1972.

16. On April 18, 1972, Seleznov made a cash payment to defendant of $10,000 and submitted a mortgage to him which was unacceptable to defendant.

17. On May 31, 1972, after a series of negotiations between Seleznov and defendant, a mortgage in the principal sum of $80,000 was tendered with the Calncrest Apartment Company as mortgagor and defendant as mortgagee, secured by the aforementioned Beale tract. Said mortgage provides, inter alia, for interest at the rate of seven percent per annum to be paid before January 31st of each successive year, principal payments to be made any time after one year and not later than January 31, 1975. Said mortgage was dated January 31, 1972, but was recorded on June 23, 1972, in Mortgage Book Y-36, page 780, et seq.

18. On October 17, 1972, settlement was made between defendant and Seleznov, representing Calncrest Apartment Company on the above mortgage. On that date, defendant executed a satisfaction piece which was subsequently recorded on November 3, 1972, in Miscellaneous Deed Book 201, page 214 in the office of the Recorder of Deeds of Chester County. At said settle-

ment, defendant received the sum of $71,277.30 consisting of the principal payment of $67,000 plus interest of $4,227.30.

19. It was agreed that defendant would accept $13,000 less on the face amount of the mortgage because unexpected difficulties in costs in connection with the installation of sewage facilities on the Beale tract had occurred which resulted in greater development costs. Ten thousand dollars would be retained by Seleznov and $3,000 would be held in escrow by Commonwealth Land Title Company. Any part of this sum not actually expended by Seleznov was to be returned to defendant. At the date of the trial, defendant had neither received any of the $13,000 so held, nor had he been informed of the likelihood of same.

20. Plaintiff has requested defendant to make an accounting of the expenditures, income, profits and benefits received in connection with the purchase and sale of the aforementioned Beale tract to be made and all sums due to be paid by defendant to plaintiff pursuant to the agreement dated March 24, 1971.

21. Defendant has failed and refused to make such accounting or payment.

## II.  DISCUSSION

The genesis of the relationship between the parties occurred in the summer of 1970 when plaintiff was employed as a part-time real estate salesman in an office of which defendant was the manager. Defendant became aware of the availability of the Beale tract and discussed the possibilities for its development with plaintiff. The underlying incentive for the parties entering into a relationship was

that three things were required for the development of the Beale tract: financing; obtaining a purchaser-developer; and re-zoning for greater residential density.

Pursuant thereto, defendant entered into an agreement of sale with the Beale Estate for the purchase of the Beale tract for which he executed a judgment note in the amount of $5,000 in lieu of the payment of actual earnest money.

Plaintiff's father was an executive with a mortgage company who had many contacts in the mortgage business and construction business. It was anticipated that plaintiff's relationship with his father and plaintiff's familiarity with persons in the mortgage and construction business would aid the parties in finding a buyer and obtaining financing. Defendant was knowledgable of zoning matters and was familiar with the personnel serving on the different municipal bodies with which he would have to deal in pursuing the application for zoning change and for water and sewage.

Prior to the parties' entering into the written agreement of March 24, 1971, they contacted a person in the construction business whose name plaintiff's father supplied and who became the ultimate purchaser-developer of the Beale tract.

On March 24, 1973, the parties executed an agreement, the terms of which are set forth above. On March 30, 1971, when the new and substituted agreement of sale was entered into between defendant and the Beale Estate, defendant paid $5,000 in cash to the Beale Estate. Pursuant to the agreement of March 24, 1971, defendant requested that plaintiff send to him $2,500 in cash, which plaintiff promptly did. Following the July 7, 1971, settlement with Seleznov, defendant paid to plain-

tiff what defendant believed was the one-half share of the profits received from Seleznov to which plaintiff was entitled under the agreement of March 24, 1971.

The parameters of a joint venture were set forth in the case of McRoberts v. Phelps, 391 Pa. 591 (1958), as follows:

"To constitute a joint venture certain factors are essential: (1) each party to the venture must make a contribution, not necessarily of capital, but by way of services, skill, knowledge, materials or money; (2) profits must be shared among the parties; (3) there must be a 'joint proprietary interest and right of mutual control over the subject matter' of the enterprise; (4) usually, there is a single business transaction rather than a general and continuous transaction. The existence or non-existence of a joint venture depends on the facts and the circumstances of each particular case and no fixed nor fast rule can be promulgated to apply generally to all situations. A joint venture is not a partnership, a tenancy in common, nor a so-called 'mining partnership'; it is an association of parties—of rather recent origin—to engage in a single business enterprise for profit."

Under the facts found above, we find the relationship existing between the parties to be that of joint venturers. The relationship between those in a joint venture is fiduciary in nature, and upon each co-adventurer are imposed obligations of loyalty, fairness and good faith for disclosure towards his fellow co-adventurers. The duty of one co-adventurer to another is particularly applicable to that co-adventurer who is entrusted with the conduct of the enterprise, and toward his associates he

occupies the position of a trustee including the duty to account: Hill v. Bowman, 421 Pa. 167 (1966); McRoberts v. Phelps, supra; Goldstein Company v. Greenberg, Inc., 352 Pa. 259 (1945); Kingsley Clothing Manufacturing Company v. Jacobs, 344 Pa. 551 (1942); and Finlay v. Stewart, 56 Pa. 183 (1867).

The parties before the chancellor intended to share equally all losses and all profits derived from this real estate development venture, thereby giving them a joint proprietary interest therein and the right of mutual control over the subject matter of the enterprise. Each party in the venture contributed his respective talents thereto. It is of little significance that the agreements of sale were entered into between the Beale Estate and defendant, and not with plaintiff. Each made equal monetary contributions. The expertise and contacts which each of the parties had to offer to this enterprise have previously been set forth. These talents and contacts were their respective contributions to the joint venture. Although defendant was the primary negotiator for the parties vis-a-vis the Beale Estate and Seleznov, it was plaintiff's relationship with those in the mortgage and construction business which permitted the parties to acquire Seleznov as the ultimate purchaser-developer. The relationship was for the purpose of a single business transaction, i.e., the development of the Beale tract.

Most of the negotiations in the conduct of the enterprise were entrusted to defendant, and toward his associate, plaintiff, he occupied the position of a fiduciary owing to plaintiff the utmost fidelity, loyalty, fairness, good faith and full disclosure. Plaintiff was never given full disclosure of the profits and expenses resulting from the final settlement on this

property with Seleznov on and after October 17, 1972.

We note that defendant has filed a counterclaim praying the allowance of certain credits in the event he is directed to account. Such action must, we believe, await the filing of such an accounting and be sought pursuant thereto. We, accordingly, dismiss defendant's motion for a compulsory non-suit and make the following

## III. CONCLUSIONS OF LAW

1. The relationship between plaintiff and defendant was that of joint venturers in regard to the sale and development of the Beale tract.

2. In such relationship, the parties owed to one another a fiduciary duty.

3. Pursuant to such fiduciary duty, defendant is required to account to plaintiff concerning all financial matters in relation to the joint venture.

## DECREE NISI

And now, January 7, 1974, after trial held, defendant is ordered to file an accounting of all financial dealings in regard to the subject joint venture. The prothonotary is directed to notify the attorneys for the parties of the filing of this adjudication. If exceptions are not filed within 20 days of the date hereof, this decree shall become final upon praecipe.